LLINOIS CENTRAL RAILROAD CO. *v.* MINNESOTA.

No. 222.  Argued January 8, 1940.—Decided January 29, 1940.

158

*Mr. Chas. A. Helsell*, with whom *Messrs. M. J. Doherty, R. C. Beckett, V. W. Foster*, and *E. C. Craig* were on the brief, for appellant.

*Mr. John A. Weeks*, Assistant Attorney General of Minnesota, with whom *Mr. J. A. A. Burnquist*, Attorney General, was on the brief, for appellee.

Mr. Justice Douglas delivered the opinion of the Court.

Minnesota imposes on every railroad company owning or operating lines within its borders a five per cent tax on gross earnings derived from its operation within the state. This tax, payable in lieu of all other taxes,[1] has been sustained by this Court, in various applications, as a property tax.[2] In this case, which is here on appeal (28 U. S. C. § 344a) from a judgment of the Supreme Court of Minnesota (205 Minn. 1, 621; 284 N. W. 360; 286 N. W. 359), appellant contends that the statute as construed and applied to it violates the Fourteenth Amendment and the commerce clause of the federal Constitution.

Appellant, an Illinois railroad corporation, owns no lines in Minnesota but operates leased lines with 30.15

[1] Sec. 2246, Mason's Minn. Stats. 1927, provides in part:

"Every railroad company owning or operating any line of railroad situated within or partly within this state, shall, during the year 1913 and annually thereafter, pay into the treasury of the state, in lieu of all taxes, upon all property within this state owned or operated for railway purposes, by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five per cent of the gross earnings derived from the operation of such line of railway within this state."

Sec. 2247 defines "gross earnings" as follows:

"The term 'the gross earnings derived from the operation of such line of railway within this state,' as used in section 1 of this act is hereby declared and shall be construed to mean, all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of the mileage within the state to the entire mileage over which such business is done, of earnings on all interstate business passing through, into or out of the state."

[2] *Great Northern Ry. Co.* v. *Minnesota,* 278 U. S. 503; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *United States Express Co.* v. *Minnesota,* 223 U. S. 335.

miles of trackage in that state.[3] It owns or operates about 5,000 miles in other states. The item of gross earnings which the state seeks here to tax arises out of debts and credits for exchange of freight cars which appellant makes with other railroads, the using road being charged $1 per day per car. During the years here involved appellant had credits in its favor for such use of its cars by other roads operating in Minnesota of $17,-427,862; and debits owing such roads of $14,924,508, leaving a net credit balance in favor of appellant of $2,503,353. These debits and credits represented use of cars in other states as well as in Minnesota. In absence of adequate and accurate records their use was apportioned to Minnesota pursuant to the following formula:

Each reporting road was charged with such percentage of the credit balance owing from each using railroad as was determined by ascertaining the ratio of each using railroad's Minnesota revenue freight car miles to its system car miles.

Each reporting road was given credit for such percentage of the debit balance owing each other road as was determined by ascertaining the ratio of the reporting railroad's Minnesota revenue freight car miles to its system car miles.

The credit and debit balances were computed and apportioned annually; and the net credits were then ascertained, to which the statutory tax of 5 per cent was applied.

Thus for the year 1922 appellant had credit balances of $691,433.97 owing from 13 other roads. Their Minnesota revenue freight car miles varied from 2.3% to 100% of their system car miles, making Minnesota's proportion of the credit balances $95,359.49. For the same year appellant had debit balances from freight car hire owing to 8 other roads of $215,863.05. Appellant's Minnesota revenue freight car miles were only 0.11% of its system car

---

[3] These are operated under a 47 year lease beginning July 1, 1904, from the Dubuque & Sioux City Railroad Co.

miles for that year. Hence, it was permitted to deduct only 0.11% of $215,863.05 or $237.43, leaving $95,122.06 to which the tax was applicable. On similar computations' for each of the following seven years the tax for which the state brought suit totalled $26,414.59.

Appellant's contention under the Fourteenth Amendment is that the statute as applied in the foregoing formula denies it equal protection of the law and due process. We do not think that contention is tenable.

First as to the credit balances. These represent payments to appellant for use of its freight cars by other roads which operate in Minnesota. Minnesota does not seek to reach all of those receipts. As the statute reaches only revenues derived from operations in the state, the formula effects an apportionment. Certainly the ratio of Minnesota revenue freight car miles to system car miles is consistent with the statutory scheme of ascertaining what payments represent use in Minnesota. That the apportionment may not result in mathematical exactitude is certainly not a constitutional defect.[4] Rough approximation rather than precision is, as a practical matter, the norm in any such tax system.[5]

Second as to the debit balances. As we have said, appellant is not taxed on all of its credit balances but only on that portion which accrues as a result of the use of its cars by others in Minnesota. Hence it is not permitted under the formula to deduct all of its debit balances but only the portion thereof which it pays others for the use of their cars in Minnesota. Certainly if appellant receives $50,000 from one road for use of appellant's cars in Minnesota and pays another road $50,000 for appellant's use of that road's cars outside of Minnesota, it cannot realistically be said that no part of the

[4] Cf. *Rowley* v. *Chicago & Northwestern Ry. Co.*, 293 U. S. 102, 109.

[5] Cf. *Dane* v. *Jackson*, 256 U. S. 589, 598–599.

$50,000 received by appellant has a Minnesota origin. On the contrary, the whole $50,000 paid appellant derives from use of its cars in Minnesota. For Minnesota then to lay a tax on the whole amount (as it does under this formula) is to exercise a jurisdiction which constitutionally is hers. Similarly to permit under the formula a deduction of only those debit balances owing by virtue of the use by appellant in Minnesota of cars of other roads results in determining a net credit balance for its Minnesota activity of renting out and borrowing freight cars. To hold that that net cannot constitutionally be taxed by Minnesota but must be reduced by the amount of payments made by appellant for its use of cars in other states would be to deprive Minnesota of her jurisdiction over property within her borders.[6] For as appellant's cars move over tracks of other roads in Minnesota and as cars of other roads move over its tracks in Minnesota, certain credits and debits accrue. To say that the resultant net credit balance does not derive wholly from operations within Minnesota is to deny the fact.

But the nub of appellant's objection seems to rest on the equal protection clause of the Fourteenth Amendment. Most of its contentions come back to the point that it has only 30 odd miles of tracks in the state. On this phase, appellant makes two points. First, as compared with other roads having extensive mileage in Minnesota, it is permitted to deduct only a small fraction (between 0.1% and 0.13%) of its debit balances. Second, it is penalized for having nominal trackage in Minnesota, for roads with no trackage in the state pay no tax on these items though they may have substantial revenues from rentals of cars for use in Minnesota.

---

[6] See *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 696.

We have in substance already dealt with the first of these contentions. All roads operating in Minnesota are taxed on precisely the same, not on different bases. So far as the present incidence of the statute is concerned, the tax is laid on the net credit balances from the business of renting and borrowing cars used in Minnesota. The fact that appellant receives a larger net than others from its Minnesota activity of renting and borrowing cars and hence must pay a larger tax does not mean that Minnesota has overstepped her constitutional bounds. Appellant is not singled out for special treatment.[7] It is not taxed on one formula; the others, on another. They are all taxed pursuant to the same formula; and the formula is adapted to ascertainment of value of property situated in Minnesota. And appellant's contention that the tax is discriminatory because it has only 30 miles of track yet must pay a tax, while others with hundreds of miles may pay none, is beside the point. The business taxed is not adequately measured by trackage alone. Though appellant has but few miles of track in the state, nevertheless its cars are constantly moving over other lines in Minnesota. That produces revenue. A tax on that revenue certainly bears a close relationship to appellant's property in the state which no computation based on trackage can alter.

As to appellant's second objection under this head, little need be said. Companies not owning or operating roads within the state are not reached by this tax statute; roads that do, are. That certainly is not discrimination in the constitutional sense. Appellant has subjected itself to the jurisdiction of Minnesota. Those doing likewise are similarly treated by the state, as are domestic companies engaged in that business. The fact that that

---

[7] See *Southern Railway Co.* v. *Watts*, 260 U. S. 519; *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89.

entails burdens is a part of the price for enjoyment of the privileges which Minnesota extends.[8]

Appellant makes some point of double taxation. But the flaw in that argument is exposed by the familiar doctrine, aptly phrased by Mr. Justice Holmes, that the "Fourteenth Amendment no more forbids double taxation than it does doubling the amount of a tax; short of confiscation or proceedings unconstitutional on other grounds." [9]

Appellant's constitutional objection based on the commerce clause has been adequately answered in the prior decisions of this Court sustaining other taxes levied under this statute.[10] The right of a state to tax property, although it is used in interstate commerce, is well settled. And certainly if such tax has a fair relation to the property employed in the state (as this tax clearly does) it cannot be said to run afoul of the prohibition against state taxation on interstate commerce. As Chief Justice Fuller once said on that point, ". . . by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution." [11]

As to appellant's claim of retroactivity, little need be said. We have here at most a mere recomputation by the state of taxes payable under a statute which was existent throughout the whole period in question. Neglect of administrative officials, misunderstanding of the law, lack of adequate machinery, have never been constitutional barriers to a state reaching backward for

---

[8] See *Atlantic Refining Co.* v. *Virginia*, 302 U. S. 22, 31.

[9] *Ft. Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532, 533.

[10] *Great Northern Ry. Co.* v. *Minnesota;* *Cudahy Packing Co.* v. *Minnesota;* and *United States Express Co.* v. *Minnesota, supra,* note 2.

[11] *Postal Telegraph Cable Co.* v. *Adams, supra* note 6, p. 697.

taxes.[12] Hence the case falls far short of types of retroactive tax legislation which have repeatedly been sustained by this Court,[13] in recognition of the principle that liability for retroactive taxes is "one of the notorious incidents of social life."[14] Certainly where opportunity to be heard is afforded, as here, there can be no complaint for lack of due process of law.[15]

In conclusion, appellant contends that the Supreme Court of Minnesota erred in holding that the credits here taxed are "gross earnings" within the meaning of the statute. But on such matters of construction we defer to the state court's interpretation.[16]

*Affirmed.*

---

[12] *Florida Central & Peninsular R. R. Co.* v. *Reynolds*, 183 U. S. 471; *White River Lumber Co.* v. *Arkansas*, 279 U. S. 692.

[13] *Seattle* v. *Kelleher*, 195 U. S. 351; *Wagner* v. *Baltimore*, 239 U. S. 207.

[14] *Seattle* v. *Kelleher*, *supra* note 13, p. 360; *League* v. *Texas*, 184 U. S. 156.

[15] *Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140, 154.

[16] *Chicago Theological Seminary* v. *Illinois*, 188 U. S. 662, 674; *Storaasli* v. *Minnesota*, 283 U. S. 57, 62.