**BARCELO & CIA, S. en C., v. BUSCAGLIA, Treasurer.**

**No. 4289.**

Circuit Court of Appeals, First Circuit.
June 29, 1948.

L. E. Dubon, of San Juan, Puerto Rico (Felix Ochoteco, Jr., and Otero Suro & Otero Suro, all of San Juan, Puerto Rico, on the brief), for appellant.

I. Henry Kutz, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key and Lee A. Jackson, Sp. Assts. to Atty. Gen., and Mastin G. White, Sol., Department of the Interior, Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, both of Washington, D. C., on the brief), for appellee.

Before DOBIE, (by special assignment), MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case is here on appeal from a judment of the Supreme Court of Puerto Rico. The taxpayer, appellant, a mercantile partnership domiciled at Arecibo, Puerto Rico, brought an action against the Treasurer of Puerto Rico in the Insular District Court of San Juan, for refund of alcoholic beverage taxes levied under the Beverage Act of Puerto Rico (Act No. 1 of March 12, 1934, reenacted by Act No. 1 of June 29, 1935).[1]

---

[1] Section 2. In the interpretation of this Act, unless the context indicates a different meaning—

(a) The word "alcohol" means ethyl alcohol, hydrated oxide of ethyl or spirit of wine, from whatever source or by whatever process produced;

(b) The word "spirits" means any beverage which contains alcohol obtained by distillation, mixed with potable water and other substances in solution, including brandy, rum, whiskey, cordials, and gin;

\* \* \* \* \* \*

(e) The words "alcoholic beverage" or "beverage" include the four varieties of liquor above defined (alcohol, spirits, wine, and beer) and every liquid or solid whether patented or not containing alcohol, spirits, wine, or beer and capable of being consumed by a human being. Any liquid or solid containing more than one of the four varieties above defined shall be considered as belonging to that variety which has the higher percentage of alcohol, according to the order in which they are above defined, except as provided in subsection (c);

(f) The word "distiller" means every person who elaborates distilled spirits, or who by any process of distillation separates spirits, either pure or impure, from any fermented or other substances,

The taxpayer is engaged in rectifying and manufacturing alcoholic beverages under a rectifier's license issued pursuant to the provisions of the Beverage Act. Its product is bottled in glass bottles or flasks for sale to the public. Between August 1, 1934, and July 15, 1935, it reported to the Treasurer of Puerto Rico that it had manufactured and had ready for sale 512,374 liters of an alcoholic beverage known as rum. Taxes in the sum of $102,376.80[2] at that rate of 20 cents a liter were imposed on the 512,374 liters and paid by the taxpayer under protest. The taxpayer had produced 460,874 liters of this beverage by diluting with water 190 proof alcohol which it had bought from the Puerto Rico Distilling Company, reducing the alcoholic content to 95 proof. The other 51,500 liters were produced by diluting alcohol with water and adding wine. All of the product was stored, aged and then offered for sale to the public. The taxpayer declared the product to the Treasurer and sold it as rum under the name of "Ron Palo Viejo". As part of the purchase price of the 190 proof alcohol used in manufacturing the alcoholic beverage, the taxpayer had paid to the distilling company the tax of 25 cents per liter which had been paid by that company.

The bottles which the taxpayer used for delivering the beverage to purchasers were not manufactured in Puerto Rico but were brought there empty from outside the island. A tax of $7,773.54 was imposed on the containers used by the taxpayer, which it paid under protest.

In the insular district court the taxpayer sought a refund for the taxes paid on the beverages and on the bottles. The district court gave judgment for the taxpayer on both counts. The Supreme Court reversed that judgment and dismissed the complaint. An appeal was taken to this court.

The Beverage Act divides all alcoholic beverages into four main classifications, namely, alcohol, spirits, wine, and beer, each of which is defined. Spirits is defined as any beverage which contains alcohol obtained by distillation mixed with potable water and other substances in solution, including brandy, rum, whiskey, cordials, and gin. Section 2(e) states that any liquid containing more than one of the four varieties shall be considered as be-

---

or who being in possession or having the use of a still, makes, prepares, or is in possession of any substance suitable for distillation;

(g) The word "rectifier" means every person who rectifies or redistills distilled spirits by any process other than the original and continues the distillation of any fermented substance through the use of closed vessels or pipes until the manufacture thereof is completed; and every person who without rectifying or redistilling distilled spirits, shall color, filter, clarify, refine, or fortify the same by mixing such spirits or other liquor with any substance other than water, or who shall mix, color, fortify, carbonate, or compound liquors under the name of whiskey, gin, brandy, rum, cordial, bitters, spirits or punches, or who compounds any other spirituous beverage under any other name, except wine;

\* \* \* \* \* \* \*

Section 3. There shall be levied, collected, and paid on the following beverages produced in, or imported or brought into, Puerto Rico, a tax of: \* \* \* (c) a tax of twenty (20) cents on every liter of spirits, and a like tax for any quantity or for a fractional part thereof; and a tax of twenty-five (25) cents on every liter of alcohol, and a like tax for any quantity or for a fractional part thereof; \* \* \*

Section 4. On all containers introduced into, or manufactured in, Puerto Rico which contain alcoholic beverages and similar products, by whatever name known, and spirits and alcohol, provided that the contents thereof are subject to a tax prescribed by this Act, there shall be paid the following taxes:

(a) For each container the capacity of which does not exceed eight (8) liquid ounces, one-half (½) cent a container;

(b) For each container the capacity of which is more than eight (8) liquid ounces but does not exceed twelve (12) liquid ounces, three-fourths (¾) of a cent a container;

(c) For each container the capacity of which is more than twelve (12) liquid ounces but does not exceed one-half (½) liter, one (1) cent for each container; \* \* \*.

[2] This is the amount of tax paid, although it does not appear to be a correct computation at the rate of 20 cents per liter.

longing to that variety, which has the highest percentage of alcohol. A tax of 20 cents is imposed on every liter of spirits and a tax of 25 cents on every liter of alcohol produced in or imported in Puerto Rico. Rectifier is defined to include every person who rectifies or redistills spirits by any process other than the original and every person who, without rectifying or redistilling spirits, colors, refines or fortifies the same by mixing the spirits or other liquor with any substance other than water, or who mixes, colors, fortifies or compounds liquors under the name of whiskey, rum, etc.

It is admitted that rum is a spirit under the definition in the Act, but the taxpayer contends that the beverage it produced was not rum and thus was improperly taxed as spirits. The taxpayer relies on the dictionary definition of rum as a product of distillation, and also on expert testimony to the same effect. It argues that 460,874 liters of its product is merely alcohol mixed with water and thus not spirits within the definition of § 2(b), but only diluted alcohol on which a tax has already been paid. As to the 51,500 liters mixed with water and wine, the taxpayer claims that, since the mixture contains both alcohol and wine, by the terms of § 2(e) it should be classified as alcohol.

The Supreme Court of Puerto Rico disagreed with these contentions. It stated that it was improper to consider only definitions of rum which might be given by experts or a dictionary in determining what the legislature meant to tax. The court considered that § 2(g), which defines rectifier to include every person who compounds liquors under the name of rum, indicates an intent to include in the definition of rum any liquor under the name of rum even though not obtained by distillation. As further grounds for its decision that the beverage produced by the taxpayers was properly taxed as spirits, the Supreme Court pointed out that the beverage had been labeled and sold as rum, and having enjoyed the benefit of selling it as rum the taxpayer should not be allowed to escape taxation on the ground that the product was not rum. The court also relied on an earlier decision in which it had stated that alcohol diluted with water and stored to age is converted into rum, and thus a different product from the original alcohol. P. R. Distilling Co. v. Treasurer, 1913, 26 P.R.R. 464.

Even if this interpretation of the statute be considered less reasonable than an interpretation that by rum only the product of distillation is meant, we cannot reverse since there is no clear or manifest error. Bonet v. Texas Co., 1940, 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401. No proposition of law is more settled than that interpretation of local law by the courts of Puerto Rico can be reversed only if patently erroneous or plainly inconsistent with established principles of local law. De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384. The Puerto Rican court has interpreted the statute so that beverages for the manufacture of which a rectifier's license is necessary are taxed as beverages distinct from raw alcohol. The interpretation is certainly a possible one and not irrational. While the statute might be read as specifically excluding alcohol diluted only with water from the definition of spirits, it is also possible to read rum as including anything sold under the name of rum. It is not patently erroneous for the court to hold that persons who enjoy the benefit of selling their beverages as spirits are estopped to deny that they are spirits. Cf. United States v. J. D. Iler Brewing Co., 8 Cir., 1903, 121 F. 41. Similarly we can not say that the dictionary definition of rum is necessarily the meaning intended by the insular legislature.

Neither was the classification as spirits of the beverage which contained wine as well as alcohol and water manifestly wrong. The argument of the taxpayer that it must be classified as alcohol since it contains alcohol would if adopted result in an anomolous classification. Alcohol diluted with water would be taxed as a distinct product from alcohol whereas alcohol diluted with water and wine would not be considered a distinct product. Section 2(e) appears to refer only to mixtures not other-

wise classified under the other subsections of § 2.

 The construction adopted by the Supreme Court does not violate § 2 of the Organic Act, 39 Stat. 951, 48 U.S.A. § 737, as being a deprivation of due process or a denial of equal protection of laws. As this court has said before, the Puerto Rican legislature has a wide discretion in the matter of local taxation. The rum taxed here may reasonably be classified as a different article from the original alcohol; it is fit for human consumption whereas the original alcohol was not. Cf. Monllor & Boscio v. Sancho, 1 Cir., 1943, 136 F.2d 114. The fact that producers of rum by the use of an entirely different process may have a somewhat different tax burden does not make the tax unequal or discriminatory.

The taxpayer's contention as to the tax imposed on containers is of even less merit. Section 4 of the Beverage Act imposes a tax "on all containers introduced into, or manufactured in, Puerto Rico which contain alcoholic beverages and similar products, by whatever name known, and spirits and alcohol, provided that the contents thereof are subject to a tax prescribed by this Act * * *." All of the bottles used, by the taxpayers were imported into the island while empty. The taxpayer contends that only bottles filled with alcoholic beverages when imported are taxed by the statute. We agree with the Supreme Court which rejected this contention that so to interpret the Act would do violence to both the wording and purpose of the Act. Clearly the Act contemplates a tax on all bottles filled with taxable alcoholic beverages whether imported or manufactured in the island. We see nothing in the Act to indicate an intention that the tax could be avoided by using bottles imported into Puerto Rico while empty in place of bottles manufactured in Puerto Rico. Nor does this interpretation of the statute by the Supreme Court of Puerto Rico violate the Organic Act. What we said above in reference to the power of the legislature to make reasonable classifications is equally applicable here. See also Rivera v. Buscaglia, 1 Cir., 1944, 146 F.2d 461, 465. The legislature may classify bottles which con-

tain alcoholic beverages differently from bottles containing non-alcoholic beverages and impose a tax only on the former. The cases cited by the taxpayer are clearly not in point. Those cases involved additional taxes by municipalities on occupations already taxed by the insular legislature. They have no bearing on the power of the legislature itself to impose different type taxes. The mere fact that a tax is double does not affect its validity unless it operates unequally on the same class. Illinois Central R. R. v. Minnesota, 1940, 309 U.S. 157, 164, 60 S.Ct. 419, 84 L.Ed. 670; Ft. Smith Lumber Co. v. Arkansas, 1920, 251 U.S. 532, 533, 40 S.Ct. 304, 64 L.Ed. 396; People v. Garzot, 1916, 24 P.R.R. 215. Whether the tax here be considered a porperty tax or use tax we think it is valid.

The judgment is affirmed.