**RAILROAD COMMISSION OF TEXAS,
et al., Appellants,**

v.

**CHANNEL INDUSTRIES GAS
COMPANY, Appellee.**

No. 3-88-094-CV.

Court of Appeals of Texas,
Austin.

Aug. 16, 1989.
Rehearing Denied Sept. 13, 1989.

Jim Mattox, Atty. Gen., William E. Storie, Ass. Atty. Gen., Austin, for appellants.

Barry Bishop, Mr. David H. Gilliland, Clark, Thomas, Winters & Newton, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

## ON MOTION FOR REHEARING

CARROLL, Justice.

The opinion of the Court in this cause handed down on June 14, 1989, is withdrawn and the following is substituted therefor.

This tax refund case presents a problem of statutory construction involving Tex. Rev.Civ.Stat.Ann. art. 6060 (1962). The district court agreed with the taxpayer's reading of the statute and ordered a refund of taxes paid under protest.

The Railroad Commission[1] complains on appeal that art. 6060 is a tax on gross receipts; that in this statute the terms "gross income" and "gross receipts" are used interchangeably; and that the tax as written and as applied is constitutional. We agree and we will reverse the judgment of the district court and render judgment favoring the Railroad Commission.

## BACKGROUND

Article 6060 provides in part that "[e]very gas utility subject to the provisions of this subdivision ... shall file with the Commission a statement ... showing *the gross receipts* of such utility ... and shall pay ... one-fourth of one per cent of *the gross income* received from all business done by it within this state ..." (emphasis added).

Channel Industries is an intrastate pipeline operator which transports natural gas for others and for resale. Beginning in 1983 Channel filed protest payments for taxes paid under art. 6060.

In 1987 Channel brought suit seeking a refund of $304,242 plus interest on the $674,913 taxes it had paid. Channel argued that art. 6060 taxes a utility's "gross income," rather than its "gross receipts," and that, as applied, art. 6060 violates the equal protection clause of the United States Constitution and the equal and uni-

form taxation clause of the Texas Constitution.

After trial, the court entered findings of fact and conclusions of law. Pertinent to this appeal are conclusions of law four, five, six, and seven, and finding of fact four. In conclusion four the court held that art. 6060 is not ambiguous; that "gross income" means "gross receipts" less cost of goods sold; and that gross income is the measure for computing art. 6060 tax under the plain language of the statute. In conclusion five it found that art. 6060 imposes a tax on transportation, not on the sale of natural gas. In conclusions six and seven the court found that Channel had been denied its right to equal and uniform taxation under the Texas Constitution, and to equal protection under the United States Constitution.

## THE COX ACT

The legislature enacted the Cox Pipe Line Act in 1920. The Act empowered the Railroad Commission to regulate businesses which use pipelines for intrastate transportation. Tex.Laws 1920, ch. 14. The businesses subject to the art. 6060 tax were listed in art. 6050, and included the following businesses:

1. Producing or obtaining, transporting, conveying, distributing or delivering natural gas....

2. Owning or operating or managing a pipe line for the transportation or carriage of natural gas, whether for public hire or not....

3. Producing or purchasing natural gas....

The 1931 legislature removed the businesses described in sections 1 and 3 of art. 6050 from the definition of "gas utility," and thus from the occupations subject to the art. 6060 tax, but left those businesses described in section 2 subject to the tax. Tex.Laws 1931, ch. 73, § 10; *Thompson v. United Gas Corp.,* 190 S.W.2d 504 (Tex. Civ.App.1935, writ ref'd).

1. The Railroad Commission is the principal appellant along with Ann Richards and Jim Mattox in their official capacities. The appellants are collectively referred to as "the Railroad Commission."

## DISCUSSION

At the outset, we need to distinguish the *subject* of the tax imposed by art. 6060 from the *measure* of the tax. The *subject* of the tax is the occupation or business of operating a pipeline for transporting natural gas. The *measure* of the tax is gross receipts from business done by any entity engaging in the occupation subject to the tax. The tax is not a tax on the activity of transporting gas, nor on the sale of gas, nor on gross receipts. Rather, it is a tax on engaging in a certain business, measured by gross receipts. *See* Hellerstein, State and Local Taxation 27–31 (4th ed. 1978).

### 1. Statutory Construction of Article 6060

The Railroad Commission contends that the trial court erred as a matter of law in holding that "gross receipts" is not synonymous with "gross income," and erred in defining "gross income" as gross receipts less cost of gas.

▇ Article 6060 requires gas utilities to file a statement "showing *gross receipts,*" and to pay a tax of "one-fourth of one per cent of the *gross income* received from all business done by it" (emphasis added). The parties agree that "gross receipts" means all monies received by a company. The issue is whether "gross income" means all monies received or gains beyond expenses. Article 6060 does not, however, define either "gross receipts" or "gross income." When a term is undefined, we read that term according to its ordinary meaning at the time the statute was enacted unless the statute clearly shows a contrary intention. *Taylor v. Firemen's & Policemen's Civil Service Commission,* 616 S.W.2d 187, 189 (Tex.1981).

In 1920 when the Cox Act was passed, Black's Dictionary of Law, 612 (2nd ed. 1910), defined "income" as follows:

The return in money from one's business, labor, or capital invested; gains, profits, or private revenue. "Income" means that which comes in or is received from any business or investment or capital, without reference to the outgoing expenditures; while "profits" generally means the gain which is made upon any business or investment when both receipts and payments are taken into account. "Income," when applied to the affairs of individuals, expresses the same idea that "revenue" does when applied to the affairs of a state or nation [citations omitted].

Black's Dictionary did not define "receipts" in any economic sense, and it defined "gross" in its general sense of "Great; culpable. General. Absolute or entire." A leading commentator of the era discussed "income" as follows:

Where the tax is to be measured by income, this must be understood as gross income, and it will be chargeable even though there be no profits. If a railroad company which is taxable on gross income leases its road to another, receiving nothing but rent, it is nevertheless liable on the net income of the road. Income, when not qualified in a tax-law, may be held to mean that which comes in or is received from any service, business, or investment of capital, without reference to outgoing expenditures; and it thus differs from net income, net earnings, or profits, which mean the gain with both receipts and expenditures taken into the account.

1 Cooley, A Treatise on the Law of Taxation, at 684–685 (3rd ed. 1903).

▇ These definitions strongly, but not conclusively, support the Railroad Commission's view that "gross income" means all monies received. However, Channel argues that the definition used in federal income tax law is the proper definition. Federal law defined "gross income" to be gains beyond expenses. Because the Cox Act was not modelled after the federal income tax statutes, the federal definition is not dispositive. We believe the meaning of "gross income" is not clear and unambiguous, so we resort to familiar rules of construction to determine legislative intent. *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex. 1974).

We first look at the language in the statute as a whole. There are four references to "gross receipts" and one reference

to "gross income."[2] Channel argues that since two different terms were used, two different meanings were intended. Although we presume the legislature uses every word in a statute intentionally, *Eddins–Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957), it does not necessarily follow that the 1920 legislature intended different meanings for gross receipts and gross income.

Because the meaning of "gross income" is unclear, we will give weight to the construction of the statute by the Railroad Commission as the agency charged with its administration. *Ex parte Roloff,* 510 S.W.2d 913. At trial, the Director of Auditing, Steve Newberry, testified that the Commission has defined "gross income" as: "gross revenues; gross receipts, it would be the total revenues received by a utility from the sale of gas or from the transportation of gas." He also stated that the Commission has applied this definition "[a]s far as I know, since the beginning."

The Commission's interpretation is bolstered by many attorney general opinions, which we consider persuasive, although not binding. *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593 (Tex.1975). Our survey of attorney general opinions concerning art. 6060 reveals that like the legislature, the attorney general has also used "gross income" and "gross receipts" interchangeably.[3] What we consider persuasive, however, is not the *label* which the attorney general applied, but the *interpretation* which the attorney general made. In no opinion has the attorney general read the statute to direct a tax based on gains beyond expenses, i.e., the definition urged by Channel. Instead, the attorney general

has interpreted the statute to require a tax on all monies received, despite any label to the contrary. *See, e.g.,* Op.Tex. Att'y Gen. No. WW–926 (1960); No. S–140 (1954); No. V–795 (1941); No. O–2994 (1937).

In summary, we are not persuaded by Channel's claim that the tax applies to the gross receipts less cost of gas. An equally valid definition at the time the tax was passed is that the tax applied to all income—a definition the Railroad Commission has consistently applied since the statute was enacted. We believe that the legislature intended "gross income" to be synonymous with "gross receipts" in art. 6060, and we sustain the Railroad Commission's second and third points.

■ In its first point the Commission contends that the trial court also erred in holding that art. 6060 does not apply to the gross receipts of a pipe line company which transports gas for resale. Conclusion of law five states:

> [A]rticle 6060 imposes a tax on the business of the transportation of natural gas. Article 6060 does not impose a tax on the sale of natural gas. [Citations omitted.] Defendants' interpretation would make the tax applicable not only to the *transportation* of natural gas, but also the *sale* of natural gas. Such an interpretation clearly violates the mandate of Article 6060.

According to Channel, after the 1931 partial repeal, a tax could not be collected on the receipts from the *sale* of gas transported by a transmission company such as Channel. We disagree.

The 1931 amendment deleted from the definition of public utilities companies which *primarily* distribute and sell or pro-

---

**2.** The following are original references to "gross receipts" and "gross income" in the Cox Act. (1) The original preamble of the act describes it as an act "requiring reports of annual income and levying a *gross receipts tax on the incomes* of said utilities ..." (2) Section 11 of the original act (now art. 6060) states that utilities shall file a report "showing the *gross receipts*" and pay a 0.25% tax on the "*gross income received* from all business done by it...." (3) The last clause of section 11, which was deleted by the 1931 amendment stated: "The *gross receipts tax charge* herein required to be paid, when paid, shall be allowed as an operating expense." (4)

The original section 12, (now articles 6066 and 6061) referred to a "*gross receipts tax,*" This phrase was deleted when that section was amended. (Emphasis added.)

**3.** The following opinions refer to art. 6060 as a "gross receipts" tax: No. S–140 (1954); No. O–2998 (1937); No. O–2993 (1936); No. O–3524–A (1942). On the other hand, some opinions refer to it as a "gross income" tax: No. S–155 (1955); No. WW–926 (1960). Other opinions refer to it as both: No. V–795 (1941); No. O–2994 (1937).

duce natural gas. *Thompson v. United Gas Corp.*, 190 S.W.2d 504 (Tex.Civ.App. 1935, writ ref'd). However, companies that primarily transport gas still fall within the definition of "public utilities" and are still subject to the art. 6060 tax. Under art. 6060, a company must pay a percentage of gross receipts from "all business done." This includes gross receipts from the sale of gas:

> The second question concerns the receipts to which the tax is applicable. As has been pointed out, the tax applies to the *gross* income received from *all* business done within the State of Texas. There is not [sic] provision for segregating income according to the type of business done; nor is there any provision for dividing or allocating the gross income on any basis. [Citations omitted.] Consequently, it is clear that the tax applies to (1) the gross income which West Texas receives from the hydrocarbons, ... (2) to the amount received for transporting gas in the instances where West Texas does not obtain title to the gas, and (3) to the sales price of the gas which West Texas purchases from producers and resells.

Atty. Gen. Op. WW–926 (1960). *See also* Comment, *The Cox Act: To Tax or Not to Tax,* 17 Hous.L.Rev. 1023 (1980). We sustain the first point.

**2. Constitutionality of Article 6060**

In points four through eight the Railroad Commission complains of the trial court's holdings that art. 6060 violates the Texas [4] and federal constitutions [5]. The court stated in finding of fact four:

> There are companies doing business in Texas which are engaged solely in the business of transporting natural gas.... [and] derive all of their gross receipts from the transportation.... Companies that transport gas only and companies, like Plaintiff, that buy gas, transport it and resell it, are both engaged in the

same business of transporting gas and receive the same benefit from the State of Texas. However, when the Article 6060 tax is measured by gross receipts, ... Channel pays a disproportionately higher tax than a company that only transports gas, based on a comparison of the receipts which Channel and such company derive solely from the transportation of gas.

In conclusion of law six, the court stated:

> Defendants have denied Channel its right to equal and uniform taxation under the Texas Constitution, because of their arbitrary, discriminatory, intentional and systematic higher imposition of Article 6060 tax on Channel than on corporations engaged solely in the transportation of natural gas.

In conclusion of law seven, the court stated:

> Defendants have denied Channel its right to equal protection under the United States Constitution, because of their arbitrary, discriminatory, intentional and systematic higher imposition of Article 6060 tax on Channel than on corporations engaged solely in the transportation of natural gas.

■ The equal protection clause of the Fourteenth Amendment and the equal and uniformity requirements of the Texas Constitution are substantially similar. To determine whether a statute satisfies the constitutional requirements we ask two questions: "(1) Is the Classification of the tax reasonable? and (2) Within the Class, does the legislation operate equally?" *Grayson v. Calvert*, 357 S.W.2d 160, 162 (Tex.Civ. App.1962, ref'd n.r.e.).

■ The United States Supreme Court has held: "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S.

---

**4.** Article VIII, sec. 1 requires: "Taxation shall be equal and uniform"; Art. VIII, sec. 2 requires: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority of levying the tax."

**5.** The Fourteenth Amendment states: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). We must remember that the Fourteenth Amendment "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation.... It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value...." *Id.* at 526–527, 79 S.Ct. at 440–441.

The classification or "class" set out in art. 6060 is any business "[o]wning or operating or managing a pipe line for the transportation or carriage of natural gas, whether for public hire or not...." Art. 6050. As discussed above, this article originally included other classes, *e.g.*, producers and distributors. Only pipelines are included now because the legislature has amended the law to omit the other classes. The legislature has the right to say which classes will be included within this tax. In other industries the legislature has often set up different taxation schemes for different types of businesses. Choosing a particular tax for gas pipelines is within the "flexibility and variety" permitted the legislature in structuring reasonable taxation schemes.

We conclude that art. 6060 and art. 6050 do not establish any class or classes which violate equal protection.

As such, we can see that the true gravamen of Channel's unconstitutionality claim is the law's disproportionate effect.[6] The cause of the "disproportionate" effect is clear: the class is measured by one standard (gas pipelines) and the tax is measured by a separate standard (all business). The district court reached its decision by accepting Channel's disproportionate effect claim, even though Channel provides no authority for the proposition that the legislature must use the same standard to measure the class and the tax. In fact, the United States Supreme Court has specifically upheld a tax statute that used two

different standards. *Illinois Central R. Co. v. Minnesota*, 309 U.S. 157, 60 S.Ct. 419, 84 L.Ed. 670 (1940).

The business being taxed in *Illinois Central* was railroads; the measure of the tax was the net value of lending and borrowing railroad cars in Minnesota. In response to the railroad's complaint that the tax violated equal protection, the Court reasoned:

All roads operating in Minnesota are taxed on precisely the same, not on different bases. So far as the present incidence of the statute is concerned, the tax is laid on the net credit balances from the business of renting and borrowing cars used in Minnesota. The fact that appellant receives a larger net than others from its Minnesota activity of renting and borrowing cars and hence must pay a larger tax does not mean that Minnesota has overstepped her constitutional bounds. Appellant is not singled out for special treatment. It is not taxed on one formula; the others, on another. They are all taxed pursuant to the same formula; and the formula is adapted to the ascertainment of value of property situated in Minnesota. And appellant's contention that the tax is discriminatory because it has only 30 miles of track and yet must pay a tax, while others with hundreds of miles may pay none is beside the point. The business taxed is not adequately measured by trackage alone. Though appellant has but few miles of track in the state, nevertheless its cars are constantly moving over other lines in Minnesota. That produces revenue. A tax on that revenue certainly bears a close relationship to appellant's property in the state which no computation based on trackage can alter.

*Id.* at 163, 60 S.Ct. at 422–423. Channel has made the same argument: the legislature should have picked a standard to measure the tax that would more accurately reflect the activity of the class of businesses being taxed. We disagree. Gross receipts is at least as rational a tax base as is

---

**6.** It is difficult to see how Channel concluded that the effect is disproportionate. Channel pays one quarter of one percent of its gross receipts. Other companies pay at the same rate.

Channel pays a higher amount because Channel has higher gross receipts. Therefore, we adopt the label "disproportionate" merely as a convenient summary of Channel's position.

"the net credit balances from the business of renting and borrowing cars used in Minnesota."[7]

Examining art. 6060 under the rational basis test, we believe that the means are rationally related to the legitimate end of raising money for the State. The classification which taxes gas utilities, i.e., companies which own or operate a pipeline, is not unreasonable or arbitrary. Article 6060 taxes all gas utilities according to the same formula. It does not single out Channel and other companies which transport gas both for hire and for resale, but treats all members within the same class uniformly and equally. As in *Illinois Central*, it is beside the point that Channel pays higher taxes because its gross receipts are higher.[8] Finding art. 6060 constitutional, we sustain the Railroad Commission's fourth, fifth, and eighth points.[9]

### 3. Sufficiency Points

Finally, in points six and seven the Railroad Commission complains that there was no evidence, or insufficient evidence to support the finding that Channel received any benefit from the State, or that it received the same or a lesser value from transporting and selling its own gas than it received from transporting gas for a fee. Whatever error exists is not reversible under Tex.R.App.P.Ann. 81(b)(1) (Supp.1989) because art. 6060 is not a franchise tax, but an occupation tax, and thus is not concerned with benefits conferred.

### CONCLUSION

The Railroad Commission's points are sustained, and the judgment is reversed and rendered that Channel take nothing by its suit.

Reversed and rendered.

---

7. Apart from the *Illinois Central* holding, Channel's general proposition is unsound. There is *no* doctrine which invalidates a law *solely* for its disproportionate *effect*. The United States Supreme Court has considered disproportionate effects in its analysis of certain statutes' constitutionality. But those statutes implicated race or gender bias, i.e., situations which involve strict scrutiny of the statute in question and there is no strict scrutiny here. Also, even when the Supreme Court did consider the effect of a law, the effect was only considered as *evidence* of invidious discrimination in the statute's classification or application. Therefore,

although Channel may feel that the effects are unfair, there is no basis for holding the statute unconstitutional based on its results.

8. A statute is applied inconsistently when it is not enforced against all companies which come within its scope. Channel has not contended that the tax is unevenly enforced.

9. Because tax considerations have long been a driving force in choosing corporate structures, Channel's problem seems more suited for the boardroom than the courtroom.