MOORMAN MANUFACTURING
COMPANY, Appellee,

v.

G. D. BAIR, Director of Revenue, State
of Iowa, Appellant.

No. 60220.

Supreme Court of Iowa.

May 25, 1977.

Rehearing Denied June 27, 1977.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., Harry M. Griger, Asst. Atty. Gen., for appellant.

Walter R. Brown, and John V. Donnelly of Swift, Brown & Winick, Des Moines, for appellee.

James L. Rogers and Russell L. Samson of Rogers & Phillips, Des Moines, and Philip B. Kurland, Walter V. Schaefer and Walter Hellerstein of Rothschild, Barry & Myers, Chicago, Ill., on brief for amicus curiae.

MASON, Justice.

The fundamental issue on this appeal concerns the constitutionality, facially and as applied to the circumstances present herein, of certain provisions of the Iowa corporate income tax scheme. The issue stems from the district court's ruling that the Iowa single-sales-factor formula was facially unconstitutional in violation of due process clauses of the federal and Iowa Constitutions and commerce clause of the federal constitution. The Director of Revenue (Director) appeals from this adverse ruling and plaintiff cross-appeals from rulings adverse to it. The facts were stipulated in the proceedings had in the district court and show the following.

Plaintiff, Moorman Manufacturing Company (hereinafter Moorman), is an Illinois corporation which was doing business in Iowa and elsewhere. Its principal source of income during the fiscal years in question, March 31, 1968 through March 31, 1972, was derived from the manufacture and sale of some 80 different products for feeding livestock and poultry. It is what is commonly referred to as a "unitary" business, that is,

its income arises from sources and activities carried on in several states.

During the years involved Moorman had five manufacturing plants located in Illinois, Texas and Nebraska. Its products were sold by more than 2500 salesmen, employees of Moorman, in more than 30 states during the years in question.

It carries on substantial activities in the state of Iowa. With a force of over 500 employees in this state Moorman engages in continuous solicitation of Iowa customers. After sales are negotiated delivery to Iowa customers is typically made from one of the six warehouses that Moorman operates in the state. These warehouses located at Stanwood, Plainfield, Goldfield, Marcus, Atlantic and Knoxville are maintained by Moorman's employees. It did no manufacturing in Iowa. The products that Moorman sells in Iowa are all manufactured in Illinois.

Iowa imposes a tax upon the net income of domestic corporations and foreign corporations doing business in the state. Section 422.33, The Code, 1975. A corporation's "net income" is based upon its "taxable income" as computed for federal tax purposes with an allowance for certain adjustments. Section 422.35. When the trade or business of a corporation is carried on entirely within the state, the corporation is subject to Iowa taxation on the entire amount of its net income. Section 422.-33(1). However, when a corporation's trade or business is carried on partly within and partly without the state, it is subject to taxation only on that portion of its net income "reasonably attributable to" the trade or business within the state. Section 442.33(1).

· Two computational steps are prescribed by section 442.33(1) for determining that portion of a corporation's net income which is reasonably attributable to its Iowa activities. First, certain income, the geographical source of which is easily identifiable, is allocated to the appropriate state. Section 422:33(1)(a). The second step allocates the remaining net income in one of two ways, depending upon the nature of the corpora-

tion's activities. Where, as here, the corporation's income is derived from the manufacture or sale of tangible personal property, the portion of its net income attributable to its Iowa activities "shall be in that proportion which the gross sales made within the state bear to the total gross sales." Section 422.33(1)(b). The statute defines "gross sales of the corporation within the state" as the "gross sales from goods sold and delivered within the state, excluding deliveries for transportation out of the state." If a taxpayer believes this apportionment formula operates so as to subject him to taxation on a greater portion of his net income than is reasonably attributable to his Iowa activities, provision is made for an application for an alternative method of allocation. Section 422.33(2).

Moorman filed its first income tax return with the state of Iowa for its fiscal year ended March 31, 1949. Pursuant to approval of the Iowa State Tax Commission, Moorman, after allocating its interest, dividends, rents and royalties (less related expenses) within and without the state of Iowa, apportioned the remainder of its net income to the state of Iowa on the ratio that its payroll, property and sales, as computed by Moorman, within the state of Iowa bore to its payroll, property and sales everywhere in the United States, as computed by Moorman, giving equal weight (.33) to its computed payroll, property and sales factors. This method was used by Moorman in each successive income tax return filed with the state of Iowa up to and including the income tax return filed for its fiscal year ended March 31, 1960.

For its fiscal years ended March 31, 1961, 1962, 1963 and 1964, Moorman determined its income from the sale of tangible personal property in this state pursuant to the single-sales-factor formula provided for in section 422.33(1), The Code, at the direction of the Iowa State Tax Commission.

However, beginning in its fiscal year of 1965 Moorman again applied the three-factor-property-payroll-sales formula in computing its income from the sale of tangible personal property attributable to Iowa and

has applied such formula in each succeeding return filed to date, including those filed for the years in issue. The State Tax Commission did not consent to this application of the three-factor formula.

Moorman appealed to the Polk District Court from an order issued by the Director relating to Moorman's corporate income tax returns for its fiscal years ending March 31, 1968, 1969, 1970, 1971 and 1972 which required Moorman to apportion to Iowa for Iowa income tax purposes for those years its net income derived from the manufacture and sale of tangible personal property by use of the single-sales-factor formula provided for in section 422.33(1)(b), The Code.

Moorman's appeal to the district court involved an attack on the Iowa single-sales-factor formula on three basic grounds which were: (1) The Iowa single-sales-factor formula is facially unconstitutional; (2) The Iowa single-sales-factor formula is unconstitutional, as applied to Moorman's net income; and (3) The failure of the Director to allow Moorman the use of an alternative apportionment formula constituted an abuse of the Director's discretion granted him under section 422.33(2), The Code, 1975.

The three-factor formula employed by Moorman in computing its income from the sale of tangible personal property attributable to Iowa for the years 1968 through 1972 is explained by the Director in his brief and argument in this fashion: A unitary multistate corporation computes its total net business income from all sources according to the laws of the taxing state. The corporation then computes a payroll factor, the numerator of which is the payroll in the taxing state and the denominator of which is the total corporate payroll everywhere. The corporation then computes a property factor, the numerator of which is the value of the property in the taxing state and the denominator of which is the total corporate property value located everywhere. Property rented by the corporation from others is generally included in the property factor under special rules. The corporation then computes a sales or gross receipts factor, the numerator of which is the gross sales or receipts in the taxing state and the denominator of which is the total corporate gross sales or receipts everywhere.

In an effort to afford a better understanding of the results of the application of the single-factor formula and the three-factor approach we refer to the following discussion as set forth in the trial court's findings.

Moorman reported total gross sales from all of its operations in this country for the fiscal year 1968 of $97,719,800. Of that sum $22,102,015 represented sales in Iowa. Application of the single-factor formula results in the fraction of approximately ⅕—as a percentage, 22.6177%. This factor is multiplied against Moorman's net income with the product representing the income to which Iowa applies its rates.

The three-factor approach used by Moorman works in this manner: The Iowa sales percentage (22.6177%) is given one-third weight (.33 × 22.6177%), as are the elements of payroll and property. Moorman's Iowa property holdings for the year represent merely 1/25 of the property it owns everywhere—4.0753%. Moorman's payroll for that year amounted to $23,919,381 of which $3,739,426 was paid to its Iowa salesmen and warehousemen. A fraction between ⅙ and ⅐ of its entire year's payroll went to Iowa wage earners—15.6335%. The property factor and payroll factor are given equal weight with the sales factor so that the weighted percentage applied to Moorman's net income for that year is: (.33 × .226177) plus (.33 × 0.40753) plus (.33 × .156335) or .141088 or 14.1088%. This decimal is thus contrasted to the product gained from the single-sales-factor formula alone; here, .226177.

In ruling on Moorman's various contentions, the district court held, in pertinent part, as follows:

"In view of the factual findings made by this Court throughout this opinion, we conclude:

"(1) * * *;

"(2) That Iowa Code Section 422.33(1)(b) does not violate the Equal Protection Clauses of either United States Constitution of Iowa Constitution;

"(3) That Iowa Code Section 422.33(1)(b) is facially unconstitutional in violation of the Due Process Clauses of both the United States Constitution and Iowa Constitution; and

"(4) That Iowa Code Section 422.33(1)(b) is facially unconstitutional in violation of the Commerce Clause, Article I, Section 8, Clause 3, of the United States Constitution because it

"(a) does not fairly apportion interstate business activity to intrastate tax values;

"(b) causes multiple taxation of corporate net income by more than one taxing jurisdiction; and

"(c) provides local business with a direct commercial advantage not so enjoyed by interstate business.

"(5) * * *."

The following is an overview of the issues presented herein by the contentions asserted in both appeals:

1. *Facial Constitutionality—Due Process.*

The Director maintains the district court's determination that the exclusive use of the sales-factor formula for allocating the income of a multi-state corporation to the appropriate states, mandated by section 422.33(1)(b), was, on its face, violative of the due process clauses of the Iowa and federal constitutions, is erroneous as a matter of law. Specifically, the Director maintains Moorman's argument, adopted by the district court, that section 422.33(1)(b) taxes income-producing activities wholly outside the boundaries of Iowa and thus violates the constitutional principle of due process, is not supported by and is contrary to case law authority.

2. *Facial Constitutionality—Commerce Clause.*

As noted, the district court held, on three separate grounds, that section 422.33(1)(b)

violated, on its face, the commerce clause of the federal constitution. The Director maintains the "test" used to determine the constitutionality of an income apportionment formula when challenged as violative of due process is the same "test" utilized when such a formula is analyzed with respect to a possible violation of the commerce clause. As a result, the Director's contention that section 422.33(1)(b) does not violate the principle enunciated in the commerce clause is buttressed by the same arguments and authorities set out in the "due process" portion of the Director's brief. Moorman, on the other hand, maintains the district court's determination is well supported by case law authority and is eminently sound.

3. *Facial Constitutionality—Equal Protection.*

The trial court concluded equal protection concepts were not violated by section 422.33(1)(b), on its face. On its cross appeal, Moorman contends the district court's determination was erroneous as a matter of law. Specifically, it is argued the exclusive use of the sales-factor formula results in a corporation being taxed on an amount of its net income which bears no relation to the corporation's activities in the state nor the benefits received by the corporation from the state. Moorman maintains section 422.33(1)(b) "blatantly discriminates" against corporations whose manufacturing facilities are outside of Iowa in light of the fact those corporations are taxed in the same manner as corporations whose manufacturing facilities are located within the state and thus enjoy the benefits afforded them by the state. The Director counters Moorman's arguments by asserting all corporations similarly situated are treated equally by the Iowa scheme. In addition, the Director claims Moorman did not sustain its burden of demonstrating that no rational basis exists for the classifications established by section 422.33(1)(b).

4. *Constitutionality, As Applied—Due Process.*

The district court concluded Iowa's sales-factor apportionment formula was facially violative of the due process clauses of the Iowa and federal constitutions and was likewise contrary to the commerce clause of the federal constitution. In light of that conclusion the trial court deemed it unnecessary to resolve Moorman's contention section 422.33(1)(b), as applied to Moorman, was contrary to principles of due process. The Director, relying upon the fact the trial court looked to the factual circumstances herein demonstrated by the parties' stipulation thereto, contends the district court actually concluded section 422.33(1)(b) was violative of due process as applied to Moorman rather than on its face.

Consequently, it is urged this issue is the crux of the controversy. The Director claims section 422.33(1)(b) is not violative, as applied, of Moorman's due process rights, relying upon the alleged fact Moorman is not "unique" in conjunction with claimed case law support for the validity of this type of apportionment formula. Moorman, however, maintains the district court appropriately analyzed the facial validity of the sales-factor formula and found it wanting with respect to due process concepts. In the alternative, Moorman argues that should this court conclude section 422.-33(1)(b) is facially free from constitutional defect, its application to Moorman amounts to a denial of due process, relying upon the arguments posited in the facial due process portion of its brief and argument.

5. *Constitutionality, As Applied—Commerce Clause.*

Again, in light of its ultimate conclusion, the district court did not feel it necessary to resolve Moorman's contention concerning the constitutionality of section 422.33(1)(b), as applied, with respect to the commerce clause of the federal constitution. If this court determines section 422.33(1)(b) is not facially constitutionally defective, Moorman seeks relief by way of this contention, relying upon alleged case law support and its previously referred to commerce clause argument. The Director, again arguing that commerce clause and due process considerations are substantially identical, relies upon his previously referred to commerce clause and due process arguments and maintains no constitutional violation is present under these circumstances.

6. *Constitutionality, As Applied—Equal Protection.*

This issue was not resolved by the district court for the previously referred to reason. Moorman contends application of section 422.33(1)(b) to it results in a denial of equal protection, citing as support therefor the equal protection argument asserted in its challenge to the facial validity of the subject statute. The Director seeks to rebut those contentions by pointing to department of revenue statistics which demonstrate Moorman was not treated differently from other similarly situated taxpayers. In addition, the Director again points to alleged case law support for the proposition that no specific income apportionment formula is constitutionally required.

7. *Constitutionality, As Applied—Article VIII, Section 12, Iowa Constitution.*

Moorman, on cross appeal, points to department of revenue records demonstrating that one foreign manufacturing corporation was permitted by the Director to apportion its net income according to a formula other than that prescribed by section 422.33(1)(b) and argues such fact constitutes a violation of Article VIII, section 12, of the Iowa Constitution, which prohibits such "exclusive privileges." The Director contends that constitutional provision has no application to administrative as opposed to legislative acts, or, in the alternative, cannot serve as the basis for Moorman's requested relief in the absence of a demonstration of discriminatory taxation with respect to similarly situated corporations. No mention of this issue can be found in the district court's ruling.

8. *In ordering Moorman to comply with section 422.33(1)(b), did the Director contravene the duties and responsibilities imposed upon him by section 422.33 and act arbitrarily and capriciously?*

Moorman contends the Director's denial of Moorman's request for an alternative apportionment formula, pursuant to section 422.33(2), violated the duties imposed upon the Director by said section in light of the fact it was clearly demonstrated the sales-factor formula did not result in the allocation to Iowa of that portion of Moorman's net income which was reasonably attributable to Moorman's Iowa business activities. Moorman argues such refusal was the result of a "total abdication of duty" and was arbitrary and capricious. The Director maintains an alternative formula is only available to a taxpayer if the application of the sales-factor approach results in the very constitutional deficiencies which are allegedly involved herein. In other words, it is the Director's position this issue is meaningless in light of the fact any resolution of the constitutional issues involved herein disposes of Moorman's contention. Consequently, the Director again advances his previous constitutional arguments. This issue was not confronted by the trial court.

9. *Retroactivity or prospectivity of a determination section 422.33(1)(b) suffers constitutional deficiencies.*

Resolution of this issue is complicated by a vague record with respect to procedural aspects connected therewith. At this point, suffice it to say Moorman contends this issue is not before this court since it was not raised below. In the alternative, Moorman argues the scope of any decision herein is controlled by section 422.73, which establishes limitations upon the timeliness of refund requests. The Director, on the other hand, argues this court *must* define the scope of any determination invalidating section 422.33(1)(b) and posits guidelines in this regard. The district court held its ruling would apply to Moorman and all similarly situated corporations not foreclosed by the time limitations established by sections 422.28 and 422.73.

I. At the outset, this court employs several well settled principles in dealing with questions of a statute's constitutionality:

■ It is well settled, with notable exceptions not here involved, that all presumptions are in favor of the constitutionality of a regularly enacted statute.

■ Where the constitutionality of a statute is merely doubtful this court will not interfere as it must be shown that legislative enactments clearly, palpably and without doubt infringe upon constitutional rights before an attack will be upheld.

■ Moorman, as the attacking party, has the burden to demonstrate beyond a reasonable doubt the act violates the constitutional provisions invoked and to point out with particularity the details of the alleged invalidity. To sustain this burden it must negative every reasonable basis which may support the statute. *State v. Kueny,* 215 N.W.2d 215, 216–217 (Iowa 1974); *Sampson v. City of Cedar Falls,* 231 N.W.2d 609, 612 (Iowa 1975); *State v. Kramer,* 231 N.W.2d 874, 879–880 (Iowa 1975); *State v. Aldrich,* 231 N.W.2d 890, 894 (Iowa 1975); *Avery v. Peterson,* 243 N.W.2d 630, 633 (Iowa 1976); *City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

*Keasling v. Thompson,* 217 N.W.2d 687, 690 (Iowa 1974), states this principle:

"The judicial branch of the government has no power to determine whether legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some provision of the Constitution. * * [citing authority]."

In the field of taxation, it would appear the above principles somewhat understate the deference accorded the legislature. In this regard, see 71 Am.Jur.2d, State and Local Taxation, section 96, page 417 and 84 C.J.S. Taxation § 7, pages 53–54.

In *Butler Brothers v. McColgan,* 315 U.S. 501, 507, 62 S.Ct. 701, 704, 86 L.Ed. 991, 996, citing authorities, the Court declared that one who attacks a formula of apportion-

ment of income of a corporation doing business in several states carries the distinct burden of showing by "clear and cogent evidence" that it results in extraterritorial values being taxed by the taxing state.

II. As stated, the trial court held the apportionment provision of the Iowa corporate income tax was facially unconstitutional in violation of due process clauses of the federal and Iowa Constitutions and commerce clause of the federal constitution.

When a corporation's trade or business is carried on partly within and partly without the state its tax base generally cannot satisfactorily be identified or segregated on a geographical basis. Due to the impracticability of so identifying or segregating the tax base of such a unitary business resort is made to apportionment formulae as a rough means of attributing a reasonable share of the tax base to the taxing state. These considerations are especially pertinent to the taxation of net income, which is at issue here. The net income or profits of a business frequently are "earned by a series of transactions beginning with manufacture in [one state] and ending with sales in other states," and "[t]he Legislature, in attempting to put upon this business its fair share of the burden of taxation, [is] faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders." *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 120–121, 41 S.Ct. 45, 46–47, 65 L.Ed. 165, 169.

In regard to the two previously mentioned computational steps prescribed by section 422.33(1) for ascertaining the Iowa portion of the corporation's net income we point out that the initial step is to assign to Iowa the interest, dividends, rents and royalties received in connection with the business inside Iowa and to assign to non-Iowa sources such income received in connection with business outside the state. All income thus assigned is deducted from the overall federally-based determination of net income that would have been taxable by Iowa if the corporation in question had carried on its entire business within the state.

The income which remains after the first step in the statutory procedure is dealt with in one of two ways. In some cases, which are not of concern here, the remaining income may be specifically allocated within and without the state pursuant to rules and regulations promulgated by the director. In other cases the legislature, recognizing the difficulty of specifically allocating to various jurisdictions the net income remaining after assignment of interest, dividends, etc., provided for apportionment of such income to various jurisdictions by an apportionment formula. Accordingly, when corporations are engaged in the manufacture or sale of tangible personal property partly within and partly without the state where there is ordinarily no satisfactory means of determining the precise jurisdictional source of net income derived for that activity, the statute provides:

"Where income is derived from the manufacture or sale of tangible personal property, the part thereof attributable to business within the state shall be in that proportion which the gross sales made within the state bear to the total gross sales." Section 422.-33(1)(b), The Code.

An apportionment formula, whether a single factor, two factor, or three factor, must be applied against a computed net income. The "net income" of a corporation is defined in section 422.35 to include taxable income properly computed for federal income tax purposes under the Internal Revenue Code of 1954 with certain adjustments, one of which is an equitable deduction for 50 percent of federal income taxes paid during the tax or income year.

The Supreme Court has recognized that such formulae, which owe their very existence to the absence of exact alternatives for dividing the tax base of a unitary business, cannot be expected to achieve precision.

" * * * [T]his Court has long realized the practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities * * and has declared that 'rough approximation rather than precision' is sufficient. *Illinois*

*Central Ry. v. State of Minnesota,* 309 U.S. 157, 161, 60 S.Ct. 419, 422, 84 L.Ed. 670." *International Harvester Co. v. Evatt,* 329 U.S. 416, 422, 67 S.Ct. 444, 447, 91 L.Ed. 390, 395.

In *Nashville, C. & St. L. Ry. v. Browning,* 310 U.S. 362, 365–366, 60 S.Ct. 968, 970, 84 L.Ed. 1254, 1256, " * * * the problem to be solved * * * [was] what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions. Basic to the accommodation of these conflicting state and national interests is realization that by its very nature the problem is incapable of precise and arithmetical solution. * * *

" * * * In a matter where exactness is concededly unobtainable and the feel of judgment so important a factor, we must be on guard lest unwittingly we displace the tax officials' judgment with our own."

█ Hence, it is not necessary that a state demonstrate its use of the single-factor formula has resulted in an exact measure of value. However, when a taxpayer comes forward with strong evidence tending to prove the formula employed will yield a grossly distorted result in its particular case, the state is obliged to counter that evidence to make the accommodation necessary to assure that its taxing power is confined to its constitutional limits. *Norfolk & W. Ry. Co. v. Missouri State Tax Com'n,* 390 U.S. 317, 329, 88 S.Ct. 995, 1003, 19 L.Ed.2d 1201, 1210.

In *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 135, 51 S.Ct. 385, 389, 75 L.Ed. 879, 908, the Court upset the application of a state apportionment formula upon a showing by the taxpayer that the percentage of income attributable to the taxing state was in fact "out of all appropriate proportion to the business transacted" by the taxpayer in the taxing state.

█ It appears to be well settled that a corporation doing business in several states challenging a formula of apportionment of income has the heavy burden of proving by "clear and cogent evidence" that the appor-

tionment is grossly and flagrantly excessive. In support see *Norfolk & W. Ry. Co. v. State of North Carolina,* 297 U.S. 682, 688, 56 S.Ct. 625, 628, 80 L.Ed. 977, 982.

Although, as stated, the trial court's ruling the Iowa single-sales-factor formula was facially unconstitutional in violation of due process is based upon the provisions of both the federal and Iowa Constitutions, a separate discussion of the two constitutional provisions is not necessary under the general principle that similar constitutional guarantees are usually deemed to be identical in scope, import and purpose. *Davenport Water Co. v. Iowa State Commerce Com'n,* 190 N.W.2d 583, 593 (Iowa 1971).

Initially, the Director's contention the district court actually concluded section 422.33(1)(b) was violative of due process as applied, rather than on its face, can be disposed of summarily. It is true, as the Director contends, that in reaching its determination the district court referred to the stipulated factual circumstances present herein. However, reference to those facts was for the purpose of explaining the general operation of the statute in order to assess its facial validity. The Director's claim the trial court's analysis was inconsistent with its conclusion is without merit.

In reaching the conclusion section 422.-33(1)(b), on its face, contravened principles of due process, the district court made the following analysis:

"In subjecting Moorman's arguments to due process scrutiny the initial inquiry must be whether 'the taxing power exerted by the state bears a relation to protection, opportunities and benefits given by the state. The simple, but controlling question is whether the state has given anything for which it can ask return.' *State of Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444 (1940) [61 S.Ct. 246, 250, 85 L.Ed. 267, 270–271, 130 A.L.R. 1229, 1233]. * * *

"Of course, Moorman, first and foremost, is accorded the not invaluable right to do business in the State of Iowa. The record shows its sales in Iowa are substantial. It is given the protection of Iowa laws with

resort to the Iowa court system * * *. It is certain that Moorman's business presence and activities in Iowa with this State's consent constitute the 'minimum connection' by which Iowa can constitutionally levy a corporate tax.

"The more narrow question presented, however, acknowledging that '. . . the tax * * * has relation to opportunities benefits (and) protection conferred or afforded by (Iowa is whether) the tax is fairly apportioned to the commerce carried on within (this State). *Norfolk & Western Railway Co. v. Missouri State Tax Commission,* 390 U.S. 317, 325 (1968) (fn 5) [88 S.Ct. 995, 1001, 19 L.Ed.2d 1201].

"Said further by the *Norfolk & Western Railway* Court, * * *

' * * * The taxation of property not located in the taxing State is constitutionally invalid, both because it imposes an illegitimate restraint on interstate commerce and because it denies to the taxpayer the process that is his due. A State will not be permitted, under the shelter of an imprecise allocation formula or by ignoring the peculiarities of a given enterprise, to "project the taxing power of the state plainly beyond its borders." (cited cases) Any formula used must bear a rational relationship, both on its face and in its application, to property values connected with the taxing State.'

" * * *

"While accepting the right of Iowa to tax its corporate income for the services, this State renders, it [Moorman] maintains that Iowa cannot tax *all* of Moorman's income because only a small proportion of servicing inputs arise from its relation with this State. Since the largest quantum of capital and labor respecting its product sold here results from its Illinois relationship, the Iowa apportionment formula fails to reasonably apportion profits traceable to Illinois operations and taxes those activities occurring in Illinois. In this sense, says Moorman, the single sales factor taxes more than that which should be fairly apportioned to Iowa and, as a consequence, violates its constitutional rights of due process * * *.

"We agree."

In support of its conclusion the district court relied heavily upon statements of the Court in *General Motors Corp. v. District of Columbia,* 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68.

In support of the trial court's ruling Moorman contends the Iowa single-sales-factor formula is facially unconstitutional in violation of due process of law because the formula attempts to tax *all* of the profits arising from sales of tangible personal property in Iowa even though the product is manufactured outside this state; thus, the single-sales-factor formula takes no cognizance of the contribution which the creation of the product outside the state makes to the realization of profit.

Moorman also asserts the Iowa single-sales-factor formula is facially unconstitutional in violation of the commerce clause of the United States Constitution because the formula does not fairly apportion net income to Iowa, causes multiple taxation of corporate net income by two or more states, and provides Iowa corporate businesses with direct commercial advantage not enjoyed by non-Iowa interstate business.

The sum of Moorman's argument is that the Iowa single-sales-factor formula is without economic or legal justification.

The Director, on the other hand, insists the formula provided in section 422.33(1) imposes a tax only on the portion of net income reasonably attributable to the trade or business within Iowa.

At this point, it should be noted the Director's contention the same "test" is applicable with respect to both a constitutional challenge to the apportionment formula established by section 422.33(1)(b) based upon due process and a similar challenge founded upon the provisions of the commerce clause has some merit. However, while similar considerations are involved in the two constitutional determinations, it would be an overstatement to say they are identical. Notwithstanding some overlap, they will be

dealt with separately herein. See *Standard Pressed Steel Co. v. Washington Dept. of Rev.*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719.

In support of the contention the district court erroneously concluded section 422.-33(1)(b) facially contravened due process guarantees, the Director asserts that the United States Supreme Court has never so held, and in fact, has consistently upheld single-factor apportionment formulae. He maintains the taxpayers in those cases which upheld single-factor formulae posited constitutional arguments identical to those asserted by Moorman to no avail, notwithstanding the fact that the tax schemes involved therein were much more harsh than Iowa's corporate tax scheme. Consequently, the Director maintains Moorman's allegations and the district court's determination are untenable.

In *State of Wisconsin v. J. C. Penney Co.*, supra, 311 U.S. at 444, 61 S.Ct. at 249–250, 85 L.Ed. at 270, 130 A.L.R. at 1232–1233, is the following:

"The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society."

The Director relies heavily upon the sentiments expressed in the above opinion and upon a number of cases of the Supreme Court which approve single-factor apportionment formulae. See *Underwood Typewriter Co. v. Chamberlain*, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; *Bass, Ratcliff & Gretton v. State Tax Commission*, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282; *National Leather Co. v. Massachusetts*, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935; *Ford Motor Co. v. Beauchamp*, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304; *Maxwell v. Kent-Coffey Manufacturing Company*, 204 N.C. 365, 168 S.E. 397, 90 A.L.R. 476, aff'd, 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040. It cannot be denied these cases are in fact supportive of the Director's contentions.

The Court has emphasized two points in evaluating the contention under the due process clause that an apportionment formula attributes more property or income to a taxing state than it may rightly claim. First, the Court has recognized that the very nature of the undertaking—the resort to a mathematical formula to determine the state's share of a business entity's tax base where there is no satisfactory way of determining it directly—involves rough approximation; and the Court has repeatedly held that the due process clause requires nothing more exacting. Second, the Court has made it plain that a taxpayer challenging an apportionment formula has more than the usual heavy burden of proving by clear and convincing evidence that the application to it of the formula produces a grossly disproportionate result. Another basic principle which has emerged from the opinions of the Supreme Court recognizes that states are given the utmost leeway both in their choice and application of formulae for apportioning the net income of a corporation whose trade or business is carried on partly within and partly without its borders as long as basic considerations of due process and equal protection are observed.

The foregoing statements constitute a fair summary of the decisions of the Court in the cited cases.

With these principles in mind it is argued that in order to sustain the trial court's holding the apportionment formula prescribed in section 422.33(1) is "facially unconstitutional" this court would be required to conclude such a formula by its very terms will necessarily produce a "grossly distorted result" or an apportionment "out of all proportion to the business transacted."

We examine this contention in light of *General Motors Corp. v. District of Colum-*

*bia*, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68, which was relied upon by the trial court in reaching its conclusion and by Moorman in its effort to support the trial court's ruling.

In the cited case the Court was faced with constitutional and statutory challenges to the method of apportionment utilized to determine tax liability under a franchise tax exacted by the District of Columbia. The statute in question provided for taxation on that portion of a corporation's net income which was "fairly attributable" to its activities within the District and authorized the tax commissioner to prescribe regulations concerning the appropriate apportionment formula to be used. General Motors challenged the sales-factor formula on the ground it attributed to the District an unreasonably high proportion of its total income, and consequently, was contrary to the provisions of the enabling statute and violative of the due process and commerce clauses of the federal constitution.

The Court determined the sales-factor formula was contrary to the statute which authorized the collection of said tax and thus reversed the lower court "without reaching the constitutional questions raised." 380 U.S. at 555, 85 S.Ct. at 1158, 14 L.Ed.2d at 70.

We quote from the opinion:

"The conclusion which we reach by analysis of the plain language of the statute also finds support in the consequences which a contrary view would have for the overall pattern of taxation of income derived from interstate commerce. The great majority of States imposing corporate income taxes apportion the total income of a corporation by application of a three-factor formula which gives equal weight to the geographical distribution of plant, payroll, and sales. The use of an apportionment formula based wholly on the sales factor, in the context of general use of the three-factor approach, will ordinarily result in multiple taxation of corporate net income; for the States in which the property and payroll of the corporation are located will allocate to themselves 67% of the corporation's income,

whereas the jurisdictions in which the sales are made will allocate 100% of the income to themselves. Conversely, in some cases enterprises will have their payroll and plant located in the sales-factor jurisdictions and make their sales in the three-factor jurisdictions so that only 33% of their incomes will be subject to state taxation. * * *

"Moreover, the result reached in this case is consistent with the concern which the Court has shown that state taxes imposed on income from interstate commerce be fairly apportioned. In upholding taxes imposed on corporate income by Connecticut and New York and apportioned in accordance with the geographical distribution of a corporation's property, this Court carefully inquired into the reasonableness of the apportionment formulae used.

" 'The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other states. In this it was typical of a large part of the manufacturing business conducted in the state. The Legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. * * * There is * * nothing in this record to show that the method of apportionment adopted by the state was inherently arbitrary, or that its application to this corporation produced an unreasonable result.' *Underwood Typewriter Co. v. Chamberlain*, 254 U.S. 113, 120–121, 41 S.Ct. 45, 47, 65 L.Ed. 165. See also *Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm'n*, * * * [supra]. While the Court has refrained from attempting to define any single appropriate method of apportionment, it has sought to ensure that the methods used display a modicum of reasonable relation to corporate activities within the State. The Court has approved formulae based on the geographical distribution of corporate property and those based on the standard three-factor formula. * * * [citing authorities]. The standard three-factor formula can be justified as a

rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates. By contrast, the geographical distribution of a corporation's sales is, by itself, of dubious significance in indicating the locus of either factor. We of course do not mean to take any position on the constitutionality of a state income tax based on the sales factor alone. For the present purpose, it is sufficient to note that the factors alluded to by this Court in justifying apportionment measures constitutionally challenged in the past lend little support to the use of an exclusively sales-oriented approach. In construing the District Code to prohibit the use of a sales-factor formula, we sacrifice none of the values which our scrutiny of state apportionment measures has sought to protect." 380 U.S. at 559–561, 85 S.Ct. at 1160–1161, 14 L.Ed.2d at 72.

Although the Court in *General Motors* by way of dictum criticized the single-sales-factor apportionment formula it "refrained from attempting to define any single appropriate method of apportionment," and explicitly pointed out that its decision was not based on constitutional grounds when it said, "We of course do not mean to take any position on the constitutionality of a state's income tax based on the sales factor alone."

■ We have recognized the principle that courts have a duty to avoid constitutional questions when merits of a case may be fairly decided without facing such questions.

In *Collier v. Denato*, 247 N.W.2d 236, 241 (Iowa 1976), we quoted with approval this statement from *State v. Thomas*, 219 N.W.2d 3, 4 (Iowa 1974):

" * * * We prefer to decide cases on nonconstitutional grounds when possible. *City of Des Moines v. Lohner*, 168 N.W.2d 779, 782 (Iowa) ('We do not consider constitutional questions unless it is necessary for the disposition of the case.'); 16 Am.Jur.2d Constitutional Law § 113 at 301; 16 C.J.S. Constitutional Law § 94 at 317 ('The principle that necessity of determination is a condition to judicial consideration of constitutional questions also finds application in the

rule that such questions will not be passed on where the issues involved in the particular case may be decided on another ground, even though the constitutional issue has been properly presented.') * * *.'"

The same principle is announced in *Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136, 67 S.Ct. 231, 234, 91 L.Ed. 128, 133 and authorities cited in footnote 8. See also *Kovacs v. Brewer*, 356 U.S. 604, 607, 78 S.Ct. 963, 966, 2 L.Ed.2d 1008, 1011.

Nevertheless, where the Court has employed the principle of avoidance of constitutional issues language used in such a decision does not afford a satisfactory basis for determining a state statute unconstitutional on its face. This is particularly true in light of the well-settled principles set out in division I hereof which this court adheres to in dealing with questions of a statute's constitutionality.

As noted, the burden is on the attacking taxpayer to demonstrate beyond a reasonable doubt that the act challenged here is unconstitutional on its face. There is nothing inconsistent with this principle and that announced in *Butler Brothers v. McColgan*, 315 U.S. at 507, 62 S.Ct. at 704, 86 L.Ed. at 996, that one who attacks a formula of apportionment of income of a corporation doing business in several states carries the distinct burden of showing by "clear and cogent evidence" that it results in extraterritorial values being taxed by the taxing state. The phrase "beyond a reasonable doubt" refers to the quantum of evidence necessary to sustain the attacking party's challenge on constitutional grounds, whereas the phrase "clear and cogent evidence" refers to the quality of evidence which must be offered by such party in an effort to sustain his burden of proof as to application of the formula issue.

There is another reason why we feel the *General Motors* decision is not determinative of the question considered in this division. As counsel points out, the statutory language on which decision turned in *General Motors* was not the provision making "net income * * * as is fairly attributa-

ble" to the District taxable; rather it was the specific requirement that net income derived from a trade or business carried on within and without the District shall "be deemed to be income from sources within and without the District." It was the Court's interpretation of this statutory phrase—which has no analogue in the Iowa statute and can scarcely be found in the due process clause—which was the fulcrum of the Court decision.

A search of the citator discloses *General Motors Corp. v. District of Columbia* has been cited in *State Loan and Finance Corp. v. District of Columbia*, 127 U.S.App.D.C. 116, 381 F.2d 895, 902 (1967), on a proposition not involved here. We are unaware of any decision, federal or state, where it has been cited on the issue before us.

As noted, in its opinions in this area the Supreme Court has recognized: (1) the practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities such as the unitary business under consideration here; (2) rough approximation rather than mathematical precision is sufficient; (3) the heavy burden cast upon the taxpayer in challenging a legislative enactment on constitutional grounds; and (4) the utmost leeway must be given the states both in their choice and application of formulae in this connection as long as basic considerations of due process and equal protection are observed.

In light of those principles we conclude section 422.33(1) calls for a method of allocation which is fairly calculated to assign to Iowa only that portion of the taxpayer's net income reasonably attributable to the trade or business done in Iowa since the taxing power exerted by this statute bears fiscal relation to the protection, opportunities and benefits given by the state. See *Complete Auto Transit, Inc. v. Brady*, —— U.S. ——, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326. It is settled law that a state which provides an orderly market in which to transact business confers benefits which constitutionally justify the levy of an income tax. *State of Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267.

It cannot logically be maintained that the apportionment formula prescribed by section 422.33(1) with the adjustments provided for in section 422.35 will necessarily produce a "grossly distorted result" or an apportionment "out of all proportion to the business transacted" in every conceivable situation which might possibly arise.

Thus far we have referred to only one of the fiscal years in issue—1968—in stating the percentage produced by application of the single-factor formula—22.617. The summary of exhibits 15 and 16 in Moorman's brief and argument shows application of this formula produced a percentage of 21.21 for 1969, 19.95 for 1970, 18.95 for 1971, and 18.67 for 1972.

Moorman points out employment of the three-factor formula would have resulted in a lower percentage for use in computing its income from sale of tangible personal property attributable to Iowa in those years.

However, the mere fact application of the single-factor formula results in a larger percentage being used for ascertaining the Iowa portion of the corporation's net income than would application of some other type of formula does not render the apportionment provision of the Iowa corporate income tax law facially unconstitutional in violation of due process clauses of the federal and state constitutions. Such evidence alone does not establish that the difference between the two figures represents either double taxation or a taxation of extraterritorial values. Fairness is not equated with absolute precision.

In our opinion the formula in question meets the due process requirement of attempting to fairly allocate the corporation's income. In support of this conclusion see *General Motors Corporation v. State*, 181 Colo. 360, at 371, 509 P.2d 1260, at 1266, and authorities cited.

The statute is free from the constitutional infirmities asserted and considered in this division. The trial court erred in holding otherwise.

III. The district court determined section 422.33(1)(b), on its face, contravened the principles embodied in the commerce clause of the federal constitution. The Director maintains such determination is erroneous as a matter of law.

The Director, perhaps overstating the similarity between the two constitutional analyses, does not distinguish between his due process and commerce clause contentions. The authorities and arguments posited in support of the former are likewise offered as supportive of the latter.

The considerations applicable to the resolution of a due process challenge to an apportionment formula are substantially similar to those utilized in assessing the validity of that formula with respect to the commerce clause. Extraterritorial taxation is constitutionally defective "both because it imposes an illegitimate restraint on interstate commerce and because it denies to the taxpayer the process that is his due." *Norfolk & W. Ry. Co. v. Missouri State Tax Com'n,* supra, 390 U.S. at 325, 88 S.Ct. at 1001, 19 L.Ed.2d at 1207.

■ The commerce clause prohibits a state from exacting a tax from an interstate corporation which is determined through application of inappropriate apportionment formulae, and consequently, subjects interstate commerce to the risk of multiple taxation. *J. D. Adams Mfg. Co. v. Storen,* 304 U.S. 307, 311–312, 58 S.Ct. 913, 916, 82 L.Ed. 1365; *Gwin, White & Prince v. Henneford,* 305 U.S. 434, 438–440, 59 S.Ct. 325, 327–328, 83 L.Ed. 272; *Central Railroad Co. v. Commonwealth of Pa.,* 370 U.S. 607, 612, 82 S.Ct. 1297, 1301, 8 L.Ed.2d 720; *Standard Pressed Steel Co. v. Washington Dept. of Rev.,* supra, 419 U.S. at 563–564, 95 S.Ct. at 709, 42 L.Ed.2d at 723. As a result of said multiple taxation, interstate commerce is put at a commercial disadvantage with respect to its local counterpart.

■ Moorman, relying upon the first paragraph of that portion of the *General Motors Corp. v. District of Columbia* opinion set out in division II, contends the apportionment formula prescribed by section 422.33(1)(b) results in multiple taxation of interstate commerce and a consequent, illegitimate benefit to Iowa manufacturers. Specifically, it maintains the sales-factor apportionment formula, on its face, subjects corporations manufacturing goods outside of Iowa and selling goods within this state to a tax on all income from their Iowa sales while the manufacturing states are also entitled to tax a portion of such income. In other words, Moorman assails the facial validity of 422.33(1)(b) on the ground it results in the taxation of more than 100% of a corporation's income from its Iowa sales. In addition, Moorman points out Iowa manufacturing corporations are not subject to such multiple taxation, and consequently, are the recipients of a statutorily based illegitimate commercial advantage.

Much of the analysis advanced in the previous division is of assistance in the resolution of Moorman's commerce clause contentions. Again, Moorman must satisfy the heavy burden of demonstrating that section 422.33(1)(b) violates the constitutional precept invoked. Furthermore, the weighty presumption of constitutionality is again operative.

Moorman's contention a foreign manufacturing corporation selling its products in Iowa is subject to tax on 100% of its income from Iowa sales ignores the provisions and application of section 422.35. That statutory provision provides for the adjustments necessary to arrive at a corporation's net income for Iowa tax purposes. A number of potentially large deductions are provided for therein, including the previously mentioned deduction of 50% of the federal tax liability incurred. Clearly, a corporation in Moorman's situation is not taxed by Iowa on 100% of its income from Iowa sales. Consequently, Moorman has not demonstrated that the provisions of section 422.-33(1)(b) result in a foreign corporation being taxed on more than 100% of its income from Iowa sales.

We rely again on the principles recognized by the Supreme Court in its opinions in this area as summarized in division II in

concluding use of the single-sales-factor formula provided by the statute does not violate the commerce clause of the United States Constitution. The trial court erred in holding otherwise.

IV. On its cross appeal, Moorman maintains the district court erred as a matter of law in concluding section 422.33(1)(b), on its face, did not violate the quarantees of equal protection provided in the federal and state constitutions.

The district court ruled as follows with respect to Moorman's equal protection contentions:

"It is readily apparent that the statute in question focuses on the classification of 'corporations.' Since classifying corporations for different tax treatment than individual persons has most recently been sustained in *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356 (1973) [93 S.Ct. 1001, 35 L.Ed.2d 351], the Iowa scheme taxing corporations cannot be challenged merely because corporations are taxed. Nor does the fact that Section 422.33 establishes a graduated tax on corporate incomes lead to a finding of an invidious classification, for all corporations, without regard to any other factors, have been taxed by the same apportionment mechanism—the single sales factor. * * * [citing authority]. The simple matter is that for purposes of classification, the legislature has singled out the income for all 'corporations' as the basis on which the single sales factor is to apply; and while application of the formula yields differing amounts of tax due, for equal protection analysis, all corporations are similarly situated and are accorded exactly the same tax treatment.

"This Court concludes that Iowa Code Section 422.33 on its face creates no classifications which may be found to violate Moorman's rights to equal protection of the law * * *. Indeed, Moorman's complaints concerning the operation of Section 422.33 would seem to be complaints shared by all corporations taxed by the statute whose operations are multi-state * * *."

Although Moorman argues section 422.-33(1)(b) is facially invalid, its brief on cross appeal contains the following:

"*On its face, it would appear * * * section 422.33(1) does operate uniformly* upon all corporations engaged in the manufacture or sale of tangible personal property in the State of Iowa * * *.

"In fact, however, it is readily apparent that *the statute does not have a uniform operation.* * * *." (Emphasis deleted and supplied).

The quoted statements from Moorman's brief and the tenor of its contentions clearly demonstrate Moorman is in fact challenging the *application* of section 422.33(1)(b) to the particular circumstances herein. The authorities cited and arguments asserted will therefore be considered when Moorman's equal protection challenge to the sales-factor formula as applied to Moorman is considered in the next division.

In any event, even if Moorman is in fact attempting to challenge the facial validity of section 422.33(1)(b) with respect to equal protection guarantees, the contention is without merit. See *City of New Orleans v. Dukes,* 427 U.S. 297, 306, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511, 518.

In *Dickinson v. Porter,* 240 Iowa 393, 400–401, 35 N.W.2d 66, 72, are the following pertinent comments:

"If there is any reasonable ground for the classifications in this law and it operates equally upon all within the same class, there is uniformity in the constitutional sense and no violation of any constitutional provision invoked by plaintiff. * * * [citing authorities].

"The statute amounts to a legislative finding there are sufficient differences between property to which the act applies and other property to justify the classification. We will not interfere unless plaintiff has proven the classification does not rest on a reasonable basis but is essentially arbitrary and palpably discriminating. * * * [citing authority].

"It is well recognized the legislature has a wide discretion in determining classifica-

tions to which its acts shall apply. * * * [citing authority]. In tax matters even more than in other fields legislatures possess the greatest freedom in classification. * * * [citing authorities].

"It is not sufficient that the court may regard the reason for the classification a poor one. * * * [citing authorities]. The differences upon which the classification is based need not be great or conspicuous. * * * [citing authorities].

" 'An iron rule of equal taxation' is neither attainable or necessary. * * * [citing authorities]."

Moorman's only attempt to demonstrate the unreasonableness of the classification contained in section 422.33(1)(b) is with reference to admittedly "extreme" hypothetical situations. Such a tactic clearly does not establish the classification is unreasonable. To the extent Moorman's position is that its situation comes within one of the hypotheticals posited, the contention more appropriately deals with the validity of the statute as applied and will be considered hereinafter.

Moorman's contention section 422.-33(1)(b), on its face, violates equal protection guarantees is without merit.

■ V. As pointed out, in view of its ultimate conclusion, the district court did not feel compelled to resolve issues presented by Moorman's contentions other than those concerning the facial constitutionality of section 422.33(1)(b).

However, since this court has determined that the single-sales-factor formula is not facially defective, Moorman's contention section 422.33(1)(b) is constitutionally deficient as applied to Moorman with respect to the due process, equal protection and commerce clauses must be dealt with.

Moorman maintains the constitutional arguments advanced for invalidating that portion of the statute on its face are equally pertinent to its claim for overturning on constitutional grounds the application of the Iowa single-sales-factor formula to its net income. Hence, it reasserts by reference the arguments previously posited in

support of the facial attacks on this statute, relying again most heavily upon *General Motors Corp. v. District of Columbia*, supra.

This court has determined section 422.-33(1)(b), on its face, is free from constitutional defect. From that determination it follows said statutory provision may generally be applied to corporate entities subject thereto without constitutional transgression. However, a statute may be constitutional with respect to some factual situations but constitutionally infirm with respect to others. *Williams v. Illinois*, 399 U.S. 235, 242, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586; *Walker v. Johnson County*, 209 N.W.2d 137, 140 (Iowa 1973); *A. B. C. Distrib. Co., Inc. v. City & Cty. of San Francisco*, 15 Cal.3d 566, 125 Cal.Rptr. 465, 542 P.2d 625, 628–629; 16 Am.Jur.2d, Constitutional Law, section 194; 16 C.J.S. Constitutional Law § 71, pages 217–218.

At this point the following statement from *State v. Richardson*, 285 A.2d 842, 846 (Me.1972), is apposite:

" * * * One who seeks to assert a particular conglomerate of circumstances in which the operation of the statute might be unconstitutional must prove such facts in an actual case to test the constitutionality of the statute, as applied, rather than to seek to invalidate it on its face by hypothesizing marginal situations in which the statute might be conceived to operate with unduly oppressive or unjustifiably arbitrary impact indicative of unconstitutionality. * * * [citing authority]."

Moorman as the challenging party has the burden to demonstrate that section 422.33(1)(b), already found to be generally constitutionally valid, violates the constitutional precepts invoked when applied to it because of special factual circumstances surrounding Moorman's claim for relief.

Under the record Moorman has not carried its burden since it has not demonstrated by the stipulated facts the Iowa single-sales-factor-apportionment formula constitutes an unreasonable and arbitrary application in Moorman's particular case. No unusual or special factual circumstances

inherent in Moorman's corporate operations are shown to exist. All that is established by the record is that Moorman apparently functions in a manner not dissimilar from the typical unitary business organization. No evidentiary justification is provided for a conclusion Moorman is somehow different from those corporations legitimately subject to the provisions of section 422.33(1)(b). In the absence of such evidence Moorman has not made out a sufficient case for overturning on constitutional grounds the application of the Iowa single-sales-factor formula to its net income.

■ VI. Article VIII, section 12, of the Iowa Constitution is applicable to corporations and provides as follows:

"Subject to the provisions of this article, the General Assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two thirds of each branch of the General Assembly; and *no exclusive privileges, except as in this article provided, shall ever be granted.*" (Emphasis supplied).

Moorman directs this court's attention to the parties' stipulation which demonstrates that one foreign manufacturing corporation was permitted to use an alternative apportionment formula during the years in question. This approval by the Director of a formula other than the sales-factor formula prescribed in section 422.33(1)(b) allegedly amounts to the unauthorized grant of an exclusive privilege in violation of the above constitutional provision.

Moorman's contention is without merit. It is clear from the language of the constitutional provision in question that it applies to legislative enactments. Consequently, it has no application to alleged improprieties on the part of the Director. However, this should not be understood as assigning unfettered discretion to the Director. The general principles embodied in the constitutional provision are well covered by various other constitutional guarantees which are applicable to the Director's conduct.

■ VII. Moorman's next contention focuses upon the Director's failure to permit Moorman to utilize an alternative apportionment formula. It is argued the Director's rejection of Moorman's request was arbitrary and capricious and contrary to the provisions of section 422.33(2) which provides:

"If any taxpayer believes that the method of allocation and apportionment hereinbefore prescribed, as administered by the director and applied to his business, has operated or will so operate as to subject him to taxation on a greater portion of his net income than is reasonably attributable to business or sources within the state, he shall be entitled to file with the director a statement of his objections and of such alternative method of allocation and apportionment as he believes to be proper under the circumstances * * *; and if the director shall conclude that the method of allocation and apportionment theretofore employed is in fact inapplicable and inequitable, the director shall redetermine the taxable income by such other method * * * as seems best calculated to assign to the state for taxation the portion of the income reasonably attributable to business and sources within the state, not exceeding, however, the amount which would be arrived at by application of the statutory rules for apportionment."

The tenor of Moorman's argument concerning the Director's allegedly arbitrary and capricious conduct makes it impossible to separate this issue from the previous issues concerning the constitutionality of section 422.33(1)(b). Moorman's argument herein is based upon the constitutional invalidity of the sales-factor apportionment formula and, once again, relies almost exclusively upon *General Motors Corp. v. District of Columbia, supra.*

By reason of the determinations made in the previous divisions of this opinion we conclude Moorman's contention considered in this division is without merit.

The decisions reached in divisions II, III and IV of this opinion require a reversal upon the Director's appeal. By reason of

the determinations reached in divisions V, VI and VII the matter is affirmed on Moorman's cross appeal.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

The United States Supreme Court has not yet decided the constitutionality of a corporate income tax formula which apportions net income of a unitary corporation based solely on the geographical distribution of sales. Although the Court has said "the geographical distribution of a corporation's sales is, by itself, of dubious significance in indicating the locus [of either a corporation's sources of income or the social costs which it generates]," it has expressly refrained from taking "any position on the constitutionality of a state income tax based on the sales factor alone." However, the Court has noted "the factors alluded to by this Court in justifying apportionment measures constitutionally challenged in the past lend little support to the use of an exclusively sales-oriented approach." *General Motors Corporation v. District of Columbia*, 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68, 73–74 (1965). In view of these statements by the Supreme Court in its most recent case touching on the subject, it seems reasonable to conclude that the constitutionality of Iowa's apportionment formula is open to question.

Moreover, I do not believe the *General Motors* case is wholly distinguishable on the basis suggested by the majority. Nevertheless, I agree with the majority that the case is not dispositive of the constitutional issues we face in this case. Further, under existing precedent of the Supreme Court and this court, I agree that Moorman did not establish the unconstitutionality of the Iowa apportionment formula either on its face or as applied here under the state due process clause and the federal due process and commerce clauses. Finally, I do not agree with the Director's view of his duty under Code § 422.33(2) but do not believe he breached his duty under the present record.

I. The problem addressed by the Court in *General Motors* was one of statutory interpretation. Hence the case did not involve principles of constitutional adjudication which implicate not only the heavy burden which must be met in demonstrating invalidity of a statute but also the distinction between invalidity of a statute on its face and as applied. See *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). A statute is not unconstitutional on its face unless it is unconstitutional in every conceivable state of facts; it is ordinarily not unconstitutional as applied unless it is unconstitutional as applied in the specific factual situation before the court. The significance of this distinction is reflected in the position of the dissenters in *General Motors* in the court of appeals. They did not dispute the constitutionality of the single-factor formula on its face. See *District of Columbia v. General Motors Corporation*, 118 U.S.App.D.C. 381, 336 F.2d 885, 902–904 (1964); see also *Smoot Sand and Gravel Corp. v. District of Columbia*, 104 U.S.App.D.C. 292, 261 F.2d 758, 763 (1958) (" 'And the gross receipts formula has been in operation too long and upheld in the courts too frequently to be attacked as unfair or unreasonable *per se* or in the abstract.' "). To be unconstitutional on its face the formula would have to be unconstitutional all of the time, not just some of the time.

In *General Motors*, the Supreme Court based its decision on resolution of the issue whether the district tax commissioners acted within their statutory authority when they adopted a singlefactor sales formula to determine the portion of corporate net income subject to the franchise tax. Two statutory directives existed. One required that the tax be on the portion of net income " 'fairly attributable to any trade or business carried on or engaged in within the District * * * .' " The other provided that the net income derived from the trade or business of any corporation " 'carried on or engaged in both within and without the District * * * be deemed to be income from sources within and without the Dis-

trict.' " *General Motors*, supra, 380 U.S. at 554–555, 85 S.Ct. at 1157, 14 L.Ed.2d at 70. In holding that the single-factor formula was inconsistent with these statutory directives, the Court relied on the fact that the formula would not apportion income to non-sales income-producing activities outside the District. By statutory mandate, net income from District sales had to be considered the product in part of outside sources. Yet the sales factor formula would not apportion any income outside the District if all sales were made in the District, even though manufacturing occurred elsewhere.

I do not believe the existence of the second statutory requirement wholly distinguishes *General Motors* from the present case on the theory this directive is not part of the constitutional standard. Of course, the first statutory requirement is identical to the constitutional mandate under the due process and commerce clauses that a tax be fairly apportioned to commerce carried on within the taxing jurisdiction. See *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.ed.2d 421 (1959); Annot., 34 L.Ed.2d 749, 765. I believe the second requirement is part of the constitutional standard when non-sales income-producing activities do occur outside the taxing jurisdiction. For example, when manufacturing activity occurs outside the jurisdiction, I believe profit realized upon sale of the manufactured goods in the taxing jurisdiction must be deemed to arise from that activity as well as from the sale. This is as basic as the principle of contradictions. A stick cannot have only one end. Similarly, income cannot be isolated from the capital or labor, or both, which produce the product or service which is sold. This is a matter of self-evident fact rather than a matter of "economic theory" as suggested by the Director in this case.

This fact has been consistently recognized by the Supreme Court. See *Stratton's Independence v. Howbert*, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285 (1913). It is basic to the apportionment formula cases. In *Underwood Typewriter Co. v. Chamberlain*, 254 U.S. 113, 120, 41 S.Ct. 45, 47, 65 L.Ed. 165, 169 (1920), the Court observed, "The profits of the corporation were largely earned by a series of transactions *beginning with manufacture in Connecticut and ending with sale in other States.* (Emphasis added). The challenge to the apportionment formula failed in *Underwood* because the taxpayer failed to demonstrate the apportionment formula, based on the geographical situs of real and tangible personal property, reached more than the profits actually earned by the income-producing activities in the taxing state. A different result occurred in *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell*, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931), precisely because the taxpayer did meet that burden. ("[T]he statutory method, as applied to the appellant's business for the years in question, operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that state.") 283 U.S. at 135, 51 S.Ct. at 389, 75 L.Ed. at 908. The constitutional standard is premised on the theory that each transaction from manufacture through sale contributes to the income which is realized, but it puts the heavy burden on the taxpayer to demonstrate what share of his income from a unitary corporation is attributable to activities in the taxing jurisdiction, and further, that the apportionment formula produces a grossly distorted result in those circumstances. *Id.*, 283 U.S. at 133, 51 S.Ct. at 389, 75 L.Ed. at 905 ("The difficulty of making an exact apportionment is apparent and hence, when the state has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases.").

Any single-factor formula is thus capable of producing a grossly distorted result because it focuses artificially on only one component of the corporation's income-producing activities. See, e. g., *Norfolk and Western Railway Company v. Missouri State Tax Commission*, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968). Less danger exists

that a multiple-factor formula will have that result because it recognizes additional relevant components.

I believe the Supreme Court struck the single-factor sales formula in *General Motors* because it read the governing statute as requiring adoption by the commissioners of an apportionment formula which would never deny recognition to non-sales income-producing activities which occurred outside the District. The case is distinguishable from the present one because the constitutional standard does not demand as much. Instead, it prohibits use of an apportionment formula which, in a given case, grossly overstates the portion of net income attributable to income-producing activities in the taxing jurisdiction. While this standard makes a single-factor sales formula more susceptible to successful attack in a particular application—for example when all sales occur in the taxing jurisdiction and all manufacturing occurs in another jurisdiction—it does not make a single-factor sales formula unconstitutional in every conceivable circumstance nor does it relieve the taxpayer of his burden to prove unconstitutionality of its application.

In the present case, Moorman did not attempt to prove the amount of its actual net income from Iowa activities in the years involved. Therefore no basis was presented for comparison of the corporation's Iowa income and the income apportioned to Iowa under the formula. In this era of sophisticated accounting techniques, it should not be impossible for a unitary corporation to prove its actual income from activities in a particular state. However, Moorman showed only that its tax liability would be substantially less if Iowa employed a three-factor apportionment formula. We have no basis to assume that the three-factor formula produced a result equivalent to the corporation's actual income from Iowa activities. Having failed to establish a basis for comparison of its actual income in Iowa with the income apportioned to Iowa under the single-factor formula, Moorman did not demonstrate that the single-factor formula produced a grossly unfair result. Thus it did not prove unconstitutionality of the formula as applied.

II. We are not limited in our interpretation of the due process clause of Ia.Const. Art. I § 9 by interpretations of the same language in U.S.Const. Amend. 14 by the Supreme Court. Deference to federalism has led the Supreme Court to accord states wide latitude in economic matters. See *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511, 516–517 (1976). This factor does not inhibit state courts applying similar state constitutional provisions. In addition, we have the independent right to say what our state constitution means. See Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489 (1977). However, the distinction makes no practical difference in the present case because we have accorded equivalent latitude to the legislature in tax matters under our state constitution. See *City of Waterloo v. Selden*, 251 N.W.2d 506 (Iowa 1977).

III. I do not believe Moorman's attack on the single-factor apportionment formula is answered by the Director's reliance on the frequent statement of the Supreme Court that, because of the practical impossibility of a state's achieving perfect apportionment, a "rough approximation" is sufficient. See *International Harvester Co. v. Evatt*, 329 U.S. 416, 67 S.Ct. 444, 447, 91 L.Ed. 390, 395 (1947). This rule does not excuse a state from trying to achieve fairness, nor does it excuse a state from using a different formula in situations where it is demonstrated that an existing formula grossly overreaches.

IV. Similarly, I do not agree with the Director that his power to grant relief under Code § 422.33(2) is limited to situations where application of the sales factor formula would be unconstitutional. I do not understand that the majority opinion approves this interpretation, but does not pass on it. I would disapprove it. The statute does not purport to impose upon the taxpayer a burden of proving unconstitutionality in order to obtain relief from the formula. Instead, he is merely required to file a statement of

his objections and set forth "such alternative method of allocation and apportionment as he believes to be proper under the circumstances * * *." In turn, the Director is not precluded from affording relief except when the taxpayer proves a grossly distorted result will ensue from use of the sales formula. Rather he is empowered to grant relief when he finds the statutory formula "inapplicable and inequitable." The statute vests the Director with reasonable administrative discretion and manifests a legislative intention that it be exercised. No issue is presented in this case regarding the constitutionality of this delegation of power.

I do not believe Moorman was prejudiced by the Director's refusal to exercise this discretion in the present case because the record does not show Moorman made an adequate case for its exercise.

I concur in the result.